194 P.3d 1174

**Julita Caburnay GURAY, aka Julita C. Guray, Plaintiff–Appellee,**

**v.**

**Joel L. TACRAS and Nora R. Bell, Defendants–Appellants.**

**No. 28419.**

Intermediate Court of Appeals of Hawai'i.

Oct. 31, 2008.

Preston A. Gima, Honolulu, on the briefs, for Defendants–Appellants.

Sherman S. Hee, Honolulu, on the briefs, for Plaintiff–Appellee.

WATANABE, Presiding Judge, FOLEY and NAKAMURA, JJ.

Opinion of the Court by FOLEY, J.

Defendants–Appellants Joel L. Tacras (Tacras) and Nora R. Bell (collectively, Appellants) appeal from the Final Judgment filed on January 30, 2007 in the Circuit Court of the First Circuit (circuit court).[1] The Final Judgment (1) entered judgment in favor of Plaintiff–Appellee Julita Caburnay Guray, aka Julita C. Guray (Guray); (2) provided in relevant part that a Default Judgment (Default Judgment) in favor of Appellants and against Alejandro Dela Cruz Guray (Alejandro), filed with the Assistant Registrar of the Land Court of the State of Hawaii (Land Court), "does not and shall not constitute a lien against the property situated at 94–275 Kahuahele Street, Waipahu, Hawaii 96797" (the Property); and (3) dismissed all other claims.

On appeal, Appellants argue that the circuit court erred by granting summary judgment in favor of Guray because the court erroneously

(1) ruled that the divorce of Guray and Alejandro automatically vested title to the Property in Guray alone;

(2) ruled that the Judgment and Marital Settlement Agreement (collectively, Divorce Decree) filed on September 26, 2003 in the California Superior Court, County of San Diego, operated to automatically transfer title of the Property solely to Guray;

(3) failed to rule that the lien created by the filing of the Default Judgment in the Land Court (judgment lien) constitutes a lien against "after acquired" property; and

(4) failed to rule that Appellants' judgment lien attached to 50% of the Property.

Appellants ask this court to reverse the circuit court's January 30, 2007 Order Granting [Guray's] Motion for Summary Judgment (Order Granting SJ), rule that Appellants hold a valid lien against the Property, and remand this case to circuit court for further proceedings consistent with that ruling.

I.

Guray, a California resident, was married to Alejandro, a Hawai'i resident. During the marriage, they owned the Property as tenants by the entirety.

As a result of a lawsuit filed in Civil No. 01–1–1234 in circuit court, Appellants obtained the Default Judgment on January 31, 2002 against Alejandro and others in the principal amount of $127,743, plus attorneys' fees and costs. The Default Judgment was filed in the Land Court on March 8, 2002.

Guray and Alejandro were divorced in California. The Divorce Decree, awarding Guray 100% of the Property, was filed in the Land Court on May 6, 2004. On that same date, Alejandro filed in Land Court a Quitclaim Deed dated March 2, 2004, conveying his interest in the Property to Guray.

On February 23, 2005, Guray filed a Complaint to Quiet Title and Remove Default Judgment in the circuit court. Guray maintained that the Default Judgment constituted a cloud on her title to the Property. She asserted that pursuant to Hawai'i law, Appellants had no right or title to, estate or interest in, or lien on the Property, which Alejandro had held as a tenant by the entirety at the time the Default Judgment was entered

---

1. The Honorable Victoria S. Marks presided.

and in which Guray now had a 100% interest. Guray argued that she was entitled to an order (1) declaring that Appellants had no interest in the Property under the Default Judgment and (2) expunging the judgment lien filed in the Land Court as an encumbrance against title to the Property.

On December 30, 2005, Appellants filed an answer to the complaint.

On December 8, 2006, Guray filed a Motion for Summary Judgment (Motion for SJ). She argued that pursuant to *Sawada v. Endo*, 57 Haw. 608, 561 P.2d 1291 (1977), no lien could attach against the Property, which Guray and Alejandro had owned as tenants by the entirety, for "the separate debts of [Alejandro] only." Further, Guray argued, the circuit court was required by the United States Constitution to give full faith and credit to the California Divorce Decree, which awarded her 100% of the Property. She added that no lien arising from claims against Alejandro could attach to the Property, where Alejandro had no interest in the Property after the divorce.

On January 2, 2007, Appellants filed a memorandum in opposition to the Motion for SJ. Appellants' arguments therein were substantially similar to their arguments on appeal.

On January 8, 2007, the circuit court held a hearing on the Motion for SJ. The circuit court explained that "[o]ne could argue that [Alejandro], at the moment that [the Divorce Decree] was entered, was nothing more than a constructive trustee of [Guray]. And to hold anything else would come out with some very bizarre results.... [A]t all relevant times, [Alejandro] had no lienable interest, first as a holder of property as tenants by the entirety and then by holder of the property which still said tenants by the entirety but, by court decree, ... was not his." The circuit court filed the written Order Granting SJ and the Final Judgment, and Appellants timely appealed.

## II.

"An award of summary judgment is reviewed *de novo* under the same standard applied by the circuit court." *Taniguchi v.* *Ass'n of Apartment Owners of King Manor, Inc.*, 114 Hawai'i 37, 46, 155 P.3d 1138, 1147 (2007) (quoting *French v. [Hawaii] Pizza Hut, Inc.*, 105 Hawai'i 462, 466, 99 P.3d 1046, 1050 (2004) (other citations omitted)). The standard for granting a motion for summary judgment is well settled:

[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

[*Taniguchi*, 114 Hawai'i at 46, 155 P.3d at 1147] (quoting *Bremer v. Weeks*, 104 Hawai'i 43, 51, 85 P.3d 150, 158 (2004) (citations, internal quotation marks, and some brackets omitted)).

*Omerod v. Heirs of Kaheananui*, 116 Hawai'i 239, 254–55, 172 P.3d 983, 998–99 (2007).

## III.

With regard to tenancies by the entirety, the Hawai'i Supreme Court has stated:

A tenancy by the entirety is a unique form of ownership in which both spouses are jointly seized of property such that neither spouse can convey an interest alone nor can one spouse's creditor attach the property to satisfy a debt. *See In re Trust Created by Declaration of Trust of Dean, Dated November 14, 1944, and Subsequently Amended*, 47 Haw. 629, 394 P.2d 432 (1964). And although a tenancy by the entirety can exist in personal property, it must manifestly appear that the spouses intended to create such an estate. *In re Estate of Au*, 59 Haw. 474, 583 P.2d 966 (1978); *see* Hawaii Revised Statutes (here-

inafter "HRS") §§ 509–1 [2] and 509–2 [3] (1985).

*Traders Travel Int'l, Inc. v. Howser,* 69 Haw. 609, 613, 753 P.2d 244, 246 (1988) (footnote in original omitted and existing footnotes added).

As to tenants in common, the Hawai'i Supreme Court has stated that they hold

> proportionately according to their respective shares (*Pilipo v. Scott,* 21 Haw. 609, 612 [ (1913) ]; *In re Taxes[,] Hui of Kahana,* 21 Haw. 676 [ (1913) ] ). Where one tenant in common makes a deed to the whole of the common property the deed conveys only his own interest and does not convey the interests of his cotenants, but where he attempts to convey a specific portion of the common property by metes and bounds to a stranger, the deed is voidable at the election of his cotenants and the grantee does not, where there is no avoidance of the deed, become a cotenant so as to enable him to have the specific portion so conveyed set aside to him and only acquires such proportionate interest in the specific part described by metes and bounds as his grantor had, not in the whole, but in this particular portion.

*Scott v. Pilipo,* 24 Haw. 277, 282–83 (1918).

Appellants argue that the circuit court erred in granting the Motion for SJ for the following reasons.

2. HRS § 509–1 (2006 Repl.) provides currently, as it did at all times during the proceedings below, as follows:

> **§ 509–1 Construed as estates in common, when.** All grants, conveyances, and devises of land, or of any interest therein, made to two or more persons, shall be construed to create estates in common and not in joint tenancy or by entirety unless it manifestly appears from the tenor of the instrument that it was intended to create an estate in joint tenancy or by entirety; provided that this section shall not apply to grants, conveyances, or devises to personal representatives or trustees.

3. HRS § 509–2(a) (2006 Repl.) provides currently, as it did at all times during the proceedings below, as follows:

> **§ 509–2 Creation of joint tenancy, tenancy by the entirety, and tenancy in common.** (a) Land, or any interest therein, or any other type of property or property rights or interests or interest therein, may be conveyed by a person

### A. Effect of California Divorce Decree

#### 1. Whether California had jurisdiction over the Property

■ Appellants argue that "it would appear that the California divorce court did not have the necessary jurisdiction to deal with or divide the [Property], since it was not 'community' property." Appellants claim the Property was not community property because it is located in Hawai'i and at the time Guray and Alejandro acquired it, they were both Hawai'i residents. Appellants cite to *In re Estate of Ikuta,* 64 Haw. 236, 639 P.2d 400 (1981), in support of this argument.

In *In re Estate of Ikuta,* Shunji Ikuta (Shunji) and his wife, Chiyoko, (collectively, the Ikutas) obtained real property in Wailupe, Hawai'i (the Wailupe property), soon after their marriage. *Id.* at 239, 639 P.2d at 403. The deed indicated that the Ikutas held title to the Wailupe property as tenants by the entirety and specifically stated that they did not hold it as tenants in common or joint tenants. *Id.*

During the marriage, due to domestic difficulties, the Ikutas entered into a property management agreement, which indicated that they owned the Wailupe property as joint tenants. *Id.* at 240, 639 P.2d at 403. Eventually, a California court issued an interlocutory decree of divorce (decree) for the Ikutas. *Id.* The decree stated that the Ikutas

> to oneself and another or others as joint tenants, or by a person to oneself and one's spouse or reciprocal beneficiary, or by spouses to themselves, or by reciprocal beneficiaries to themselves, as tenants by the entirety, or by joint tenants to themselves and another or others as joint tenants, or tenants in common to themselves or to themselves and another or others as joint tenants, or by tenants by the entirety to themselves or themselves and another or others as joint tenants or as tenants in common, or by one tenant by the entirety to the tenant's spouse or reciprocal beneficiary of all of the tenant's interest or interests, without the necessity of conveying through a third party, and each such instrument shall be construed as validly creating a joint tenancy, tenancy by the entirety, tenancy in common, or single ownership, as the case may be, if the tenor of the instrument manifestly indicates such intention.

held, and always had held, the property as joint tenants. *Id.*

One issue on appeal was "whether the California court had jurisdiction to determine tenancy of real property in Hawaii." *Id.* at 241, 639 P.2d at 404. The Hawai'i Supreme Court held that "[i]n a suit to enforce a foreign judgment, the jurisdiction of the court which rendered it is open to judicial inquiry, *Adam v. Saenger*, 303 U.S. 59, 58 S.Ct. 454, 82 L.Ed. 649 (1938), and where the question of law or fact necessary to establish jurisdiction was not litigated in the original suit, it is a matter to be adjudicated in a subsequent suit upon the judgment. *Id.*" *In re Estate of Ikuta*, 64 Haw. at 241, 639 P.2d at 404.

The Hawai'i Supreme Court went on to hold the following:

> It is the general rule in California that a court has no jurisdiction to assign separate property of one spouse to the other; and when it does, that part of its decision is not res judicata nor binding on other courts. There was no express authority for the California court to dispose of either spouse's separate property in this case. At the time of the Ikuta divorce, the relevant California statute referred only to the assignment of community property and homesteads in connection with divorce decrees.... Outside of determining community status, the California court did not have jurisdiction over the noncommunity property, and a judgment is entitled to no further effect in another state than it has in that jurisdiction. Hence we must look to Hawaii law to determine the tenancy of the Wailupe property after the Ikutas' divorce.

*Id.* at 241–42, 639 P.2d at 404 (internal quotation marks, citations, and footnotes omitted).

The supreme court also held that the Ikutas' property management agreement did not succeed in converting the property from a tenancy by the entirety to a joint tenancy because "a property management agreement only conveys a right of management, and a right of management does not convey any property rights." *Id.* at 243, 639 P.2d at 405. The supreme court stated that "[t]he law is well settled in this jurisdiction that if real

property which is held as tenants by the entirety is not otherwise provided for, an absolute divorce will convert title into a tenancy in common." *Id.* at 242, 639 P.2d at 404. Consequently, until the Ikutas were divorced, the property remained a tenancy by the entirety; after they divorced, it became a tenancy in common. *Id.* at 243, 639 P.2d at 405.

*In re Estate of Ikuta* is inapplicable to the instant case because here, the California Superior Court did not seek to "determine tenancy of real property in Hawaii." *Id.* at 241, 639 P.2d at 404. Rather, the California Superior Court awarded 100% of the Property to Guray.

### 2. Whether Full Faith and Credit Clause applies

██ Appellants further argue that although the Full Faith and Credit Clause applies "as to the issue of the divorce or abrogation of the marriage between the parties," it does not "necessarily bind" Hawai'i courts to the California Superior Court's decision regarding the division of Guray and Alejandro's property.

Article IV, Section 1, of the United States Constitution provides: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

In *Barber v. Barber*, 51 Cal.2d 244, 331 P.2d 628 (1958), the Supreme Court of California stated:

> It is settled in California that a court having jurisdiction of the parties may adjudicate their rights to land located in another state and that the adjudication is res judicata and is to be accorded full faith and credit in the situs state regardless of whether the decree orders execution of a conveyance. (*Rozan v. Rozan*, 49 Cal.2d 322, 330 et seq., [317 P.2d 11][1957].) Although such a decree cannot in itself change or determine title, and while a subsequent action for that purpose must be brought in the situs state, an adjudica-

tion, for example, that one of the parties is entitled to the property is binding in the subsequent action.

*Id.* at 247, 331 P.2d at 630–31 (year in brackets added); *see also Beeler v. Beeler,* 193 Cal.App.2d 548, 550, 14 Cal.Rptr. 460, 462 (1961) ("[T]he law is well settled that when the court has jurisdiction over the parties it can require them to execute conveyances to lands in another state in order to effectuate its decree relating to the respective rights of the parties in the property."); *Tomaier v. Tomaier,* 23 Cal.2d 754, 760, 146 P.2d 905, 908 (1944) ("It is well settled, ... that a California court having jurisdiction over the parties can require them to execute conveyances to foreign land to insure a complete determination of the controversy before the court.").

In *Tougas v. Tougas,* 76 Hawai'i 19, 868 P.2d 437 (1994), the Hawai'i Supreme Court stated:

Valid judgments of another state are entitled to full faith and credit in this jurisdiction.

A judgment is valid if:

1. the court rendering it had jurisdiction to act judicially in the case;

2. the party against whom the judgment is sought to be invoked had reasonable notice of the litigation and was afforded a reasonable opportunity to be heard;

3. it was rendered by a competent court; and

4. it is in compliance with the rendering state's requirements for the valid exercise of its court's powers.

*Id.* at 28, 868 P.2d at 446 (internal quotation marks, citations, and brackets omitted) (quoting *Cobb v. Willis,* 7 Haw.App. 238, 242, 752 P.2d 106, 109 (1988)).

There is no evidence in the record on appeal that any of the four requirements set forth in *Tougas* were not fulfilled in the instant case. Given that it is undisputed the California Superior Court had *in personam* jurisdiction over Guray and Alejandro at the time the court issued the Divorce Decree, the Divorce Decree is entitled to full faith and credit.

### B. *Sawada*

Appellants argue that for policy reasons *Sawada* should not be given precedential value in this case. Appellants maintain that in *Sawada,* the Hawai'i Supreme Court adopted the "'tenants by the entirety' rule," which was a minority view at the time. Appellants assert that the public policy for the supreme court's adoption of the tenancy by the entirety rule—"family solidarity"—"is not furthered or enjoyed by the facts of this case" because "it is more than just arguable that the marriage between [Guray] and [Alejandro] was not much more than a sham from 1982, or at least as of 1999."

■ In *Sawada,* the Hawai'i Supreme Court held that "an estate by the entirety is not subject to the claims of the creditors of one of the spouses during their joint lives." 57 Haw. at 616, 561 P.2d at 1297. The court explained that it was convinced, from a public policy standpoint, that an estate by the entirety should not be subject to the claims of the creditors of one of the spouses during their joint lives:

The interest in family solidarity retains some influence upon the institution (of tenancy by the entirety). It is available only to husband and wife. It is a convenient mode of protecting a surviving spouse from inconvenient administration of the decedent's estate and from the other's improvident debts. It is in that protection the estate finds its peculiar and justifiable function.

*Id.* (quoting *Fairclaw v. Forrest,* 130 F.2d 829, 833 (D.C.Cir.1942)).[4]

---

4. In *Sawada,* plaintiffs, who had been awarded a judgment for money damages for injuries sustained when they were struck on November 30, 1968 by a motor vehicle operated by Kokichi Endo, sued to set aside a July 26, 1969 conveyance of real property owned by Kokichi and his wife, Ume Endo, (collectively, the Endos) as tenants by the entirety, to the Endos' sons. 57 Haw. at 609–10, 561 P.2d at 1293. The Endos' sons paid no consideration for the conveyance, the Endos continued to reside on the property, and the sons were aware that their father had been in the accident and had no liability insurance. *Id.* at 609–10, 561 P.2d at 1293. The Hawai'i Supreme Court explained that

We are unable to disturb the supreme court's precedent set forth in *Sawada*. We also observe that, among other things, Appellants provide no evidence for their contention that Guray and Alejandro had a "sham" marriage.

## C. Effect of divorce on Alejandro's interest

■ Appellants maintain the circuit court erred by ruling that the Divorce Decree automatically vested title to the Property in Guray alone. They argue that notwithstanding the Divorce Decree's purporting to award a 100% interest in the Property to Guray, the decree operated to transform Guray and Alejandro's ownership interest in the Property from a tenancy by the entirety to a tenancy in common and once the ownership interest was transformed, Appellants' judgment lien immediately attached to the Property.

Further, Appellants maintain that it was not until the Quitclaim Deed was filed in the Land Court seven months after the Divorce Decree was issued that Alejandro transferred his interest in the Property to Guray. Hence, the Quitclaim Deed did not defeat Appellants' lien, which attached at the filing of the Divorce Decree.

■ We disagree with Appellants. In Hawai'i, a creditor cannot reach the interest of a tenant by the entirety. *Traders Travel Int'l, Inc.*, 69 Haw. at 613, 753 P.2d at 246. Therefore, notwithstanding Appellants' Default Judgment, Appellants' judgment lien was invalid as against the Property.

In *Chock v. Chock*, 39 Haw. 657 (1953), the Hawai'i Supreme Court stated that a divorce transforms a married couple's tenancy-by-the-entirety interest into a tenancy in common:

> By the overwhelming great weight of authority, the legal effect of an absolute

divorce is that it converts a tenancy by the entirety into a tenancy in common, each party being then possessed of a separate moiety in an estate subject to partition. The reason for the rule is that an estate by the entirety is based upon the legal unity of a husband and wife as the only parties capable of being tenants by the entirety and when that unity is severed on dissolution of the bonds of marriage by divorce so is the estate. All that then remains in common between the divorced parties is that they hold undivided interests and common title to the same land as would strangers, which by operation of law is translated into a tenancy in common without survivorship. Thus the rule meets the realities of divorce and solves the problem of ownership upon divorce logically and naturally *as to property not disposed of by the decree*. It applies even though the entire purchase price was paid by but one spouse.

*Id.* at 658–59 (citations omitted; emphasis added). However, the supreme court specifically stated that the transformation in title occurs "to property not disposed of by the decree." *Id.* at 659. In the instant case, the Divorce Decree did dispose of the Property.

Regarding Appellants' argument that the Divorce Decree converted title to the Property, however briefly, into a tenancy in common before vesting it in Guray, we agree with the Florida Supreme Court's rejection of such an argument in *Sharp v. Hamilton*, 520 So.2d 9, 10 (Fla.1988) ("Even though ... a tenancy by the entirety becomes a tenancy in common by operation of law upon dissolution of marriage, we reject the 'twinkling of a legal eye' analysis.... Entireties property is not subject to a lien against only one tenant.").

## D. Divorce Decree not binding on non-parties

Appellants contend that although the Divorce Decree is res judicata as between the

---

[c]reditors are not entitled to special consideration. If the debt arose prior to the creation of the estate, the property was not the basis of credit, and if the debt arose subsequently[,] the creditor presumably had notice of the characteristics of the estate which limited his [or her] right to reach the property.

We might also add that there is obviously nothing to prevent the creditor from insisting

upon the subjection of property held in tenancy by the entirety as a condition precedent to the extension of credit. Further, the creation of a tenancy by the entirety may not be used as a device to defraud existing creditors.

*Id.* at 616, 561 P.2d at 1296–97 (internal quotation marks and citations omitted).

parties, it "cannot and should not affect the rights of non-parties." Appellants cite to the following quote from *Vaughan v. Williamson*, 1 Haw.App. 496, 504, 621 P.2d 387, 393 (1981), in support of this argument:

> The issue before us is whether the Hawaii court may properly inquire into the disposition of the proceeds to determine whether they were chargeable against one or the other and whether it may then make corresponding offsets against child support and alimony arrearages. The answer is no. The issues in that case are res judicata and not subject to collateral attack. We are required by the Constitution of the United States to give full faith and credit to the judicial proceedings of our sister states.

We fail to see how the above passage provides support for Appellants' argument, and we find no other authority in this jurisdiction supporting the argument.

### E. "After acquired" property

Appellants argue in the alternative that the circuit court erred in failing to rule that the lien created by the Default Judgment constituted a lien against "after acquired" property. Appellants assert that their lien attached to the Property as Alejandro's "after acquired" property, i.e., not the tenancy by the entirety interest Alejandro owned prior to the divorce, but the 50% interest he *acquired afterwards*, as a tenant in common, once the Divorce Decree was filed.

Given our holding that Appellants' judgment lien was invalid as to the Property, the circuit court did not err in failing to rule that the lien created by the Default Judgment constituted a lien against "after acquired" property.

### IV.

The Final Judgment filed on January 30, 2007 in the Circuit Court of the First Circuit is affirmed.

