DAVID A. FLEMING, ALICE S. FLEMING AND LYONS K. NAONE, JR., CLERK OF THE CIRCUIT COURT OF THE SECOND CIRCUIT, STATE OF HAWAII, *v.* NAPILI KAI, LTD., A CORPORATION, ON BEHALF OF ITSELF AND ALL OTHERS SIMILARLY SITUATED, J. C. MILLAR & ASSOCIATES, LTD., A CORPORATION, AND J. C. MILLAR.

No. 4510.

JULY 20, 1967.

RICHARDSON, C.J., MIZUHA, MARUMOTO, ABE, JJ., AND CIRCUIT JUDGE KING IN PLACE OF LEVINSON, J., ON VACATION.

OPINION OF THE COURT BY ABE, J.

This proceeding was instituted in the Circuit Court of the Second Circuit by the plaintiffs-appellees to enjoin the defendants-appellants from digging and excavating Hui Road "G" and converting the roadway into a drainage ditch and also to compel the defendants to restore Hui Road "G" to the condition that existed prior to the excavation of the roadway by defendants.

All the parties to the proceeding, except Lyons K. Naone, Jr., are owners or lessees of lots adjoining said Hui Road "G." The

plaintiff, Lyons K. Naone, Jr., as Clerk of the Circuit Court of the Second Circuit, State of Hawaii, has been vested with the title to the hui roads by the Decree of Final Partition in Equity No. 235. The lots are all portions of L.C.A. 5524, R.P. 1663, to L. Konia, situated in the District of Kaanapali, Island of Maui. The tract of land described in L.C.A. 5524, R.P. 1663, was at one time known as Hui Land of Mailepai and a partition of said tract of land was ordered by the Circuit Court of the Second Circuit by the Final Decree in Partition, entered and filed on the 21st day of November, 1931, in Equity No. 235, entitled Baldwin Packers, Limited, Petitioner v. Kapahu Afong, et al., Respondents.

In the Final Decree in Partition of said equity suit, it is provided at page 6, paragraph IV, to wit:

"That the roads through the said lands, as laid out and shown upon the said map, as hereinafter more particularly described, be and the same are hereby set aside for the use of everyone having any interest in the said lands and that the title thereto shall for the time being be and it is hereby transferred to the person for the time being holding the office of Clerk of this Court as Trustee, his successors and assigns, with full power and authority in said Trustee to convey said roadways to a public body corporate charged by law with the general control of roadways but without any duty whatsoever to construct, build, maintain, or repair such roadways or any of them, * * *."

All of the roadways, Hui Road "A" to Hui Road "I," inclusive, are particularly described in the Final Decree in Partition and are also delineated in the Commissioner's Map filed in Equity No. 235, and made a part of the record of this proceeding.

The question before this court on appeal is whether Hui Road "G" may be used by some of the owners or lessees of lots adjoining said roadway as a drainage ditch.

The trial court in one of its findings of fact stated:

"The commissioners appointed in Equity No. 235 to recommend a plan to partition the parcel of land in the District

of Kaanapali aforesaid, did not recommend the creation of any drainage right of way, other than through the natural or other streams existing within the area from time immemorial. Drainage was not a problem in 1931, and the commissioners had no intention of reserving a drainage easement within the lands to be partitioned under Equity No. 235, other than over streams existing at the time of the partition."

The trial court permanently restrained and enjoined defendants from excavating Hui Road "G" and from converting the same into a drainage ditch and also ordered defendants to restore Hui Road "G" to its prior condition.

One of the contentions of defendants in the trial court was that plaintiffs had no interest in Hui Road "G," as they had abandoned the easement by their failure to use the easement. We agree with the finding of the trial court that the plaintiffs have not abandoned the use of the easement over Hui Road "G." They were not compelled to use the easement to retain this right, and the burden was on the defendants to prove that the plaintiffs had abandoned the easement over Hui Road "G."

As stated by this court in *Goo* v. *Young*, 36 Haw. 132, at page 148:

"The cases are agreed that at least where a right of way is created by grant, deed, or reservation, no duty is thereby cast upon the owner of the dominant estate to make use thereof as a condition to the right to retain his interest therein, and that mere nonuser, even for the prescriptive period, will not extinguish an easement created by grant, deed, or reservation. * * * [A]n easement may be abandoned in whole or only in part. The intention to abandon is the material question and may be proved by an infinite variety of acts. It is a question of fact to be ascertained from all the surrounding circumstances, such as permitting it to be closed for a long period of time, during which the owner of the servient estate spends large sums of money in its improvement. The acts claimed to constitute the abandonment must show a destruction of the easement, impossibility of its legitimate use resulting from some act of the easement owner or his acquiescence

in acts of others inconsistent with a future enjoyment of the easement. The burden of proving abandonment is upon the party alleging it and must be established by clear and unequivocal evidence of decisive and conclusive acts. [Citations omitted.]"

A study of the partition map shows that the so-called Hui Roads were so planned and laid out to provide the owners of respective allotments rights of way to existing government roads. Also, it should be noted that a provision of the Final Decree of Partition reads:

"That the roads through the said lands, as laid out and shown upon the said map, as hereinafter more particularly described, be and the same are hereby set aside for the use of everyone having any interest in the said lands * * *."

Said decree did not state that the roadways were for purposes of ingress and egress only—in other words, the easement was without limitation or restriction.

Courts have held that a grant or reservation of an easement of right of way in general terms should be construed as creating a general right of way for all reasonable purposes.

In *Davis* v. *Jefferson County Telephone Co.*, 82 W. Va. 357, 95 S.E. 1042, the court held that a grant of an unlimited right of way permitted the right of way to be used for all reasonable use, including the stringing of telephone lines on poles erected within the right of way.

In *New York Cent. R.R.* v. *Yarian*, 219 Ind. 477, 39 N.E.2d 604, 139 A.L.R. 455, the court in construing a reservation to maintain farm crossing over land conveyed in fee for railroad right of way at page 607 held "* * * that the reservation of a farm crossing is broad enough to permit the bringing in of the conduit underground for the purpose of supplying electricity."

In *Dowgiel* v. *Reid*, 359 Pa. 448, 59 A.2d 115, the court stated at page 121 that use of a private roadway for the transmission of electricity from the power line on the main highway to a home "* * * is a reasonable and natural use of the private road for the purpose for which it was created, to wit, to enable the owners

and occupants of the premises to which the road is appurtenant to obtain something which is essential to the livableness of the home, to wit, electricity, the same being obtainable only by the means above stated. * * *"

It is the usual and common practice in this State to use roadway easements as rights of way for electricity, telephone, water and drainage facilities and it would be reasonable to construe that Hui Road "G" was reserved not only for purposes of ingress and egress but also for those purposes.

"An appeal to the chancellor * * * is an appeal to the 'exercise of the sound discretion, which guides the determination of Courts of Equity.'" *Railroad Commission* v. *Pullman Co.,* 312 U.S. 496, 500, 85 L. Ed. 971, 61 S. Ct. 643, 645. "One of the glories of equity jurisprudence is that it is not bound by the strict rules of the common law, but can mold its decrees to do justice amid all the vicissitudes and intricacies of life. The principles upon which it proceeds are eternal; but their application in a changing world will necessarily change to meet changed situations." *Bowen* v. *Hockley,* 71 F.2d 781, 94 A.L.R. 856, 862. "We hold the court of equity has plenary power to mold its decrees in such form as to conserve the equities of all parties * * *." *Baker Sand & Gravel Co.* v. *Rogers P. & H. Co.,* 228 Ala. 612, 619, 154 So. 591, 597, 102 A.L.R. 346, 355.

We agree with the trial court that the drainage ditch* as proposed by the defendants constitutes an unreasonable use and it would unreasonably interfere with the use of Hui Road "G" by the plaintiffs for road purpose. But after careful consideration of the record and argument of counsel before us, we are not satisfied that the trial court could not have adopted its relief and molded its decree to satisfy the requirement of this particular case and thereby conserve the equities of all of the parties. The trial court should have considered whether defendants can construct drainage facilities in Hui Road "G" without unreasonably interfering with the use of Hui Road "G" for purposes of ingress and egress.

---

*A grassed 8-foot wide drainage ditch, varying in depth from 2 feet to 6 feet, with levelled bottom to provide for vehicular traffic within the ditch.

Reversed and remanded with directions to set aside the judgment and for further proceedings consistent with this opinion.

*Frank D. Padgett* (*Padgett &Greeley* and *Crockett & Langa* of counsel) for defendants-appellants.

*James H. Lack* (*Meyer M. Ueoka* of counsel) for plaintiffs-appellees.